### UNITED STATES *v.* MUNFORD and others.

*(Circuit Court, E. D. Virginia.   April 12, 1883.)*

1. FEDERAL ELECTIONS—AUTHORITY OF CONGRESS TO REGULATE—SECTION 5506, REV. ST., CONSTITUTIONAL—STATE OR MUNICIPAL ELECTIONS.

    As congress has authority under section 4, art. 1, of the constitution to regulate federal elections, section 5506 of the Revised Statutes, passed in pursuance of such authority, and for that purpose, is constitutional and valid as to such elections, but has no application to state or municipal elections.

    *U. S.* v. *Reese,* 92 U. S. 214, distinguished.

2. SAME—ARTICLE 1, § 4, CONSTITUTION—FIFTEENTH AMENDMENT.

    Under article 1, § 4, of the constitution congress has general powers of legislation concerning *federal* elections, but under the fifteenth amendment can legislate concerning *state* and *municipal* elections solely for the purpose of preventing discrimination on account of race, color, or previous condition of servitude.

### Demurrer to Information.

The information in this case charged that defendants—

"On or about the first day of November, 1882, and on divers other days thence next ensuing, continuously, up to and including the sixth day of November, A. D. 1882, at said eastern district of Virginia, to-wit, at Richmond,

Virginia, and within the jurisdiction of this court, did unlawfully combine and confederate together with each other, and with others to the jury unknown, to hinder, delay, prevent, and obstruct divers and sundry citizens and voters of the city of Richmond, Virginia, from doing certain acts required to be done to qualify said citizens to vote at an election in the state of Virginia; for this, to-wit: That on the days and dates aforesaid an election was about to occur in the state of Virginia for a congressman at large to represent the state of Virginia in the forty-eighth congress of the United States and in the third congressional district of Virginia, of which the city of Richmond forms a part, for a representative from that district in said forty-eighth congress, to-wit, November 7, 1882.

"And whereas, at said election, it was necessary, under the laws governing the same, that every citizen and voter in the city of Richmond should, in order to vote, prior to said seventh day of November, 1882, pay to the state of Virginia a capitation tax of one dollar for the year 1881.

"And whereas, the collector of state taxes for the state of Virginia, in the city of Richmond, would not receive from any citizen or voter of said city his capitation tax for the year 1881 unless and until such citizen had been assessed by the commissioner of the revenue for the city of Richmond, and no other person was authorized to receive payment of the same. And whereas, said Robert B. Munford was the commissioner of the revenue for the city of Richmond, Virginia, and said John W Wilks, Henry H. Wilkins, Charles W. Goddin, and Edward Gray were his deputies or assistants in said office on the days and at the dates of the offenses hereinabove set forth.

"And whereas, the candidates for congress from the state at large to be voted for at said election were John S. Wise, John E. Massey, and John M. Dawson; and the candidates for congress from the third congressional district of Virginia were George D. Wise and John Ambler Smith. And whereas, it was the duty of said Robert B. Munford, commissioner of the revenue for the city of Richmond, Virginia, and his said deputies or assistants, promptly, fairly, and impartially to assess for capitation tax all voters, citizens of the city of Richmond, Virginia, in 1881, as they presented themselves for assessment at the office of said commissioner, and to furnish equal facilities and opportunities for assessment to all voters and citizens applying to be assessed for capitation tax as aforesaid, without any discrimination in favor of or against any individual, or class of individuals, because of his or their political belief or preference, or for any other reason.

"Yet the said Robert B. Munford, John W. Wilks, Henry H. Wilkins, Charles W. Goddin, and Edward Gray, disregarding their duty in the premises, did not perform the same, but on the contrary, on the days and dates and at the place aforesaid, being the friends and supporters and partisans of said John E. Massey for congressmen at large from Virginia, and George D. Wise for congressman from the third congressional district of Virginia, did unlawfully combine, conspire, and confederate together to assess as many as possible of the friends and supporters of said John E. Massey and George D. Wise, and to hinder, delay, prevent, and obstruct the political friends and supporters of John S. Wise and John Ambler Smith, to-wit: William Allen, William Easley, Thomas Cousins, Randolph Jackson, Asa Reed, Frederick Draper,

Ben Fleming, Isaac Johnson, J. H. Roberts, William Blair, William Fortune, David Tiller, and divers other citizens and voters of the city of Richmond, Virginia, whose names are to the jury unknown,* from doing the lawful act of being assessed as required to be done to qualify them to vote, because said voters were the political friends and supporters of said John S. Wise and John Ambler Smith.

"And said Robert B. Munford, John W. Wilks, Henry H. Wilkins, Charles W. Goddin, and Edward Gray, so as aforesaid unlawfully combining, confederating, and conspiring, did, on the days and dates and at the places aforesaid, in and by divers and sundry discriminating, unlawful, unfair, dilatory, unnecessary, frivolous, vexatious ways and methods, by them then and there contrived and concocted, hinder, delay, prevent, and obstruct William Allen, William Easley, Thomas Cousins, Randolph Jackson, Asa Read, Frederick Draper, Ben Fleming, Isaac Johnson, J. H. Roberts, William Blair, William Fortune, David Tiller, and other citizens and voters of the city of Richmond, Virginia, to the jury unknown,* from doing the lawful act of being assessed as required to be done to qualify them to vote; with intent to hinder, delay, prevent and obstruct the said citizens and voters, to-wit, William Allen, William Easley, Thomas Cousins, Randolph Jackson, Asa Read, Frederick Draper, Ben Fleming, Isaac Johnson, J. H. Roberts, William Blair, William Fortune, David Tiller, and divers and sundry other citizens and voters of the city of Richmond, Virginia, to the jury unknown,* from doing the lawful act of being assessed as required to be done to qualify them to vote."

Defendants demurred to the information on the following grounds:

(1) The said information is not in proper and legal form, there being no averment therein that the act of being assessed for the capitation tax due the state of Virginia for the year 1881 was an act required to be done to enable persons to vote within the meaning of section 5506 in the Revised Statutes of the United States, edition of 1878; and because there is no averment that the persons conspired against were citizens of the United States, or of the state of Virginia, or city of Richmond, during the year 1881, or that any tax could have been properly assessed against them for that year; and for the further reason that the charge of the offense in said information is too general and indefinite.

(2) Because the said defendants were not required by law to assess between the last day of October and the seventh day of November, 1882, capitation taxes due the state of Virginia on persons for the year 1881.

(3) Because the constitutional provision of Virginia making the payment of the capitation a prerequisite for voting was repealed before the said information was filed.

(4) Because the act of congress refers to acts to be done by the citizen to

---

*AMENDMENT ALLOWED BY COURT.

Insert after the words "to the jury unknown," where they occur three times in the information:
"They, then and there, being citizens of Richmond, Virginia, in 1881, and at the time of said election, and otherwise qualified voters at said election, liable to be assessed and by law required to pay to the state of Virginia, at Richmond, Virginia, a capitation tax of one dollar for the year 1881."

qualify himself to vote, while the information only describes an act required to be done and performed by the defendants and not by the persons desiring to qualify themselves to vote. The assessment for taxation is not an act of the citizen tax-payer, but an act of the commissioner of the revenue alone, and therefore the alleged conspiracy to prevent the citizens from being assessed is not a conspiracy to prevent the citizens from doing an act required to be done to qualify him to vote.

(5) Because the section of the Revised Statutes of the United States for 1878, viz., section 5506, under which this information was drawn, is unconstitutional, null, and void, and has been so decided by the supreme court of the United States.

(6) Because it is not alleged that it was a duty imposed by any state law upon the defendants, or any of them, to assess for the poll tax of 1881 of the persons named in the information at the time therein specified, on or about the sixth of November, 1882, and because such law, if there be one, is not set out in the information, and for other grounds of demurrer appearing on said information.

*Edmund Waddill*, U. S. Atty., and *John S. Wise*, for the United States.

*Wm. W. Crump, W. W. Henry*, and *Hill Carter*, for the defendants.

BOND, J. This is a demurrer filed to an information in the circuit court of the United States, which charges the defendants named therein with a violation of section 5506 of the Revised Statutes, in that they combined and confederated to prevent and hinder certain citizens named therein from voting at a congressional election held November 7, 1882, by refusing to assess them for taxes so that they could pay their capitation tax, which was at that time and at that election a prerequisite for voting.

So far as the first ground of demurrer is concerned, that there is no averment in the information that the parties conspired against were citizens of Virginia, qualified to vote in 1881, and qualified to vote in the coming election of 1882, it is possible that the averments are not made explicitly; it is only by implication such facts can be known from the information; but the court will allow the United States to amend in this particular, as it can cause no surprise and work no injury to the defendants. The second ground of demurrer, that the defendants were not bound to assess the parties mentioned at the time application was made for assessment, is rather a matter of fact to be proved than a ground of demurrer, and is now overruled. The third ground of demurrer, that the capitation tax was abolished by a vote of the people to whom it was submitted at the election of 1882, after the offenses charged in the information had been com-

mitted, is not to the purpose. The parties are charged with a conspiracy to hinder and prevent the qualified voters from doing an act prerequsite to enable them to vote. The offense is under criminal statutes of the United States. Those statutes have not been repealed, and it is no answer to this charge to say it is no longer a prerequisite for voting to pay a capitation tax, and that this offense cannot be committed again. The fourth ground of demurrer is overruled. The fifth ground of demurrer, that section 5506, under which the information is filed, has been declared unconstitutional by the supreme court in the case of *U. S.* v. *Reese*, 92 U. S. 214, is really the main ground of the demurrer and has been so treated in the argument. The courts of the United States are bound absolutely to follow the opinions of that tribunal in all cases, and we do so with cheerfulness because they commend themselves to the whole legal profession by their clearness of statement and accuracy of judgment. But we are not bound by the syllabus of the reporter, nor the opinions of others as to what the court decided in any case.

The *Case of Reese* was under the same section of the original act of May 30, 1870, as that under which this information is filed, with the exception that, after the argument of the *Case of Reese*, the congress of the United States re-enacted that section in the Revised Statutes, leaving out of it the words which, in the *Case of Reese*, had been considered to bring it under the fifteenth amendment, and made it a general law within the power of congress to enact, not by virtue of the fifteenth amendment, but by virtue of the power given to congress under the fourth section of the first article of the constitution. The *Case of Reese* did not arise at a congressional election. It was at a municipal election, in the state of Kentucky, and the judges of election were indicted for refusing to receive the votes of a certain person, of African descent, because of his race and color. All claims to support the indictment not arising out of the fifteenth amendment were abandoned. It will be seen that the section 5506 makes no reference to race or color, nor does it confine the crime of obstructing and hindering votes to persons of that race. The fifteenth amendment does, and therefore when the counsel of the United States abandoned all support of their indictment, except that it had from the fifteenth amendment, it had no support at all. The court so decided. The dissenting opinion of Mr. Justice HUNT goes upon the ground that the words "as aforesaid," in the section as originally enacted, referred to the former sections of the act, and repeated in it the provisions of

those sections. This very able opinion the court did not coincide in, but congress re-enacted the section, leaving those words out of it, and made it a general law.

The case we are to decide, therefore, is not the *Reese Case*, which was a case of a municipal election, but we are to decide whether congress has the power under the constitution to prevent the crimes enumerated in section 5506 at a federal election. This the supreme court did not decide in the *Reese Case*, for the chief justice says, in delivering his opinion, that all support from any other constitutional power but the fifteenth amendment was abandoned at bar in that case.

The fourth section of the first article of the constitution of the United States provides "the times, places, and manner of holding elections for senators and representatives shall be prescribed in each state by the legislature thereof, but the congress may at any time by law make or alter such regulations, except as to the places of choosing senators."

If congress can provide for the manner of election, it can certainly provide that it shall be an honest manner; that there shall be no repression of voters and an honest count of the ballots. There is little regarding an election that is not included in the terms, time, place, and manner of holding it. Since the *Reese Case* was argued congress has enacted, as we said before, this section 5506. That it comes within the power to regulate the time and place of election given by section 4, chapter 1, has been decided in this circuit over and over again, but the objection to it made at bar is that the section does not mention congressional elections, which elections alone under the fourth section it has a right to regulate.

It seems to us that when congress has power to regulate federal elections alone, given it by the constitution, and it passes a law to regulate elections under that power, every fair construction would be that they exercised their legislative power within the grant of the constitution, and that the law made in pursuance of constitutional authority applied only to the elections named in it.

The court in the *Reese Case* decided that section 5506 was not appropriate legislation to enforce the fifteenth amendment. The section said nothing of race, color, and previous condition. It was at a municipal election, and therefore was not within the power of congress under section 4, art. 1, of the constitution, which gives power to congress over federal elections. Had the same crime been com-

mitted at a federal election the court would, we think, have found the authority for section 5506 under the fourth section, art. 1, above recited.

The demurrer will be overruled.

HUGHES, J. I fully concur in the opinion just delivered by Judge BOND. I will add something on the constitutional question that has been argued so elaborately at bar. The information in this case is founded upon section 5506 of the Revised Statutes of the United States. I will remark that that section is not the same law as section 4 of the enforcement act of May 31, 1870. It is nearly the same in terms, but it contains no words connecting it with other sections of any act, as section 4 did. It stands upon its own terms and language. It was not enacted in the same bill as section 4 of the act of 1870, or at the same time, or by the same congress. It was enacted in 1874, and took effect as a law on the first of December, 1874, two months after the case of *U. S.* v. *Reese*, 92 U. S. 214, was argued before the supreme court of the United States, and more than two years after the indictment was found which was passed upon in that case. The supreme court did not in the *Case of Reese*, and has not in any subsequent case, passed upon section 5506 of the Revised Statutes; and, whatever it may have ruled in any of its decisions upon any other statute, such as section 4 of the enforcement act of 1870, *non constat* that it has thereby ruled upon section 5506, upon which the information before us is founded.

We are dealing here with an offense charged to have been committed, in a federal election, in violation of this section 5506; and the defense ask us to base our ruling, in this case of a federal election, upon the ruling of the supreme court in a case arising in a town election under the act of 1870, in which that court not only carefully confined itself to the case before it, but protested by iteration that it was not considering any law in its relation to federal elections. Its opinion in *Reese et al.* was expressly confined to section 4 of the act of 1870 in its relation to state elections, and the court held that section not to be within the purview of the fifteenth amendment of the constitution. But, even as to that section, the court did not, and took especial pains not to, decide that the section was beyond the purview of the first article of the constitution. The supreme court has never decided that section 4 of the act of 1870 was unauthorized by article 1. Much less has it ever decided that section 5506 of the Revised Statutes was unauthorized by article 1. This article and the fifteenth

amendment are as follows; and it will be seen that the former refers only to federal elections, while the latter refers to all elections, federal, state, and municipal, but limits legislation under it to the prevention of discrimination between voters on account of race, color, and previous condition. The result is that congress has general powers of legislation concerning federal elections, but can legislate concerning state and municipal elections solely for the purpose of preventing discriminations on account of race:

Article 1, § 4. " The times, places, and manner of holding elections for senators and representatives shall be prescribed in each state by the legislature thereof; but the congress may at any time, by law, make or alter such regulations, except as to the places of electing senators."

Fifteenth Amendment. " The right of citizens of the United States to vote shall not be denied or abridged by the United States, or by any state, on account of race, color, or previous condition of servitude.

" The congress shall have power to enforce this article by appropriate legislation."

It was as to whether section 4 of the act of 1870 was authorized by the fifteenth amendment, and not as to whether it was authorized by article 1, that the supreme court considered the *Case of Reese.* The indictment in that case was for an offense committed in an election of town officers in Kentucky. The indictment was founded chiefly upon section 4 of the enforcement act of May, 1870, which section provided that if any person shall, by unlawful means, hinder, etc., or conspire with others to hinder, delay, prevent, or obstruct any citizen of the United States from doing any act required to be done to qualify him to vote, he shall be punished as defined by the section. The section did not embrace, in words, the limitation that the hindering should be on account of race or color, and it made general reference to voting, and not particular reference to voting at elections for congress or for state officers.

Thus, the indictment before the court being for an offense committed at a state election, the question for decision was whether congress had, in this section 4, interfered in state elections beyond the authority given by the fifteenth amendment. Holding that congress could not interfere in state elections, except to prevent discriminations on account of race, and the case before it having arisen in a state election, the proposition which the court discussed was whether congress, in section 4, had confined itself within this limitation, and if it did not, but used general terms, what was the consequence as to the validity of this section of the enforcement act in respect to state elections. Before entering upon that discussion, the

court took pains to premise, at page 218, that it would not consider "the effect of article 1 of the constitution in respect to elections for senators and representatives in congress."

The power of congress over federal elections was as broad as the language of article 1 imports. Congress could legislate generally in respect to federal elections. The court was, accordingly, careful to premise that it would not consider the enforcement act of May 31, 1870, with reference to the first article and federal elections, but would consider it only with reference to the fifteenth amendment and state elections.

The court having, after this protest, gone on at some length in considering section 4 of that act with this particular reference, then took pains, when about to use the language so much relied upon by counsel for the defense, on page 221, to limit what it intended saying to "a penal statute enacted by congress with its limited powers;" necessarily meaning limited powers over state elections derived from the fifteenth amendment, and not meaning to speak of the general powers of congress over federal elections derived from article 1. Having, then, a second time attempted to guard its deliverances against misconstruction, the court say:

"We are called upon to decide whether a penal statute enacted by congress, with its limited powers, which is in general language broad enough to cover wrongful acts without as well as within the constitutional jurisdiction, can be limited by judicial construction so as to make it operate only on that which congress may rightfully prohibit and punish. * * * It would certainly be dangerous if the legislature could set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained and who could be set at large. * * * To limit this statute in the manner now asked for would be to make a new law, not to enforce an old one. This is no part of our duty. * * * We are not able to reject a part which is constitutional and retain the remainder; because it is not possible to separate that which is unconstitutional, if there be any such, from that which is not."

Nothing here said by the court applies to section 4 of the act of 1870, in its relation to article 1. The court did not intend to intimate that a law may not be constitutional in respect to one provision of the organic law, though not authorized by other provisions. The substance of what the court said in its argument was that where congress uses language in a statute, which, in order to be constitutional in regard to a particular indictment or class of offenses, requires the interpolation by the court of words of limitation necessary to make it constitutional, it is as to that indictment, and all in-

dictments like it, null and void. The indictment before the court was for an offense committed at a state election. The court was considering the validity of an act of congress with reference to a state election. That was the precise and only question in the mind of the court; it was the precise and only question before the court for decision; it was the question to which the court took especial pains to limit its consideration; and, according to all received canons for construing the decisions of courts, we are bound to conclude, notwithstanding any language employed *arguendo*, that the court decided no more than that section 4 of the act of May 31, 1870, was not valid to support an indictment in a United States court for acts done in a state election.

The language so much relied upon by counsel for defense was used *arguendo*, and no logic is more fallacious in juridical discussions, than that of adopting, as the solemn judgments of courts, propositions employed by judges in the progress of arguments by which they advance to the conclusions which they pronounce as their solemn judgments.

Finally, the court, in the *Case of Reese*, took pains to brush away all inferences which might be drawn from the reasoning employed in its opinion, by distinctly and carefully defining what its judgment was. It said: "We must, therefore, decide that congress has not as yet provided by appropriate legislation for the punishment of the offense charged in this indictment." That was all. The election was a state election. The offense indicted was committed at a state election, and the court held that that indictment could not stand.

Section 4 of the act of 1870 is now repealed. The supreme court never said that it was invalid under article 1 of the constitution, and it is now no longer on the statute-book. It is substituted by section 5506, as it stands in the Revised Statutes. This latter section applies only to offenses committed in relation to federal elections. No one pretends, no one has ever pretended, that it relates to state or municipal elections; for it has never before now been under adjudication. It could not be made to refer to state or municipal elections except by authority of the fifteenth amendment, and it could not be brought within that authority except by interpolating in the section the words, "on account of race, color, or previous condition of servitude." This interpolation the supreme court declares that we have no power to make; and so section 5506 is valid only in respect to federal elections. It is valid as to these latter, not because it contains express mention of these elections, but because it is authorized by

article 1 of the constitution; because congress must be presumed to have passed a constitutional law, unless it otherwise palpably appears; and because, therefore, it is a necessary implication that the object of the section is the constitutional one of protecting voters in federal elections.

See *Brown* v. *Munford, ante,* 175.